```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
GA HO KIM,                                                             :
                                                                       :
                                Plaintiff,                             :
                                                                       :       19-CV-9079 (JMF)
                -v-                                                    :
                                                                       :       OPINION AND ORDER
DK COSMETICS et al.,                                                   :
                                                                       :
                                Defendants.                            :
                                                                       :
-----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Ga Ho Kim brought this suit against Jong Kyun "John" Lee and four corporate entities that he controls — DK Cosmetics ("DKC"), DK Cos Corp. ("DKCC"), Club Clio Corp. ("CCC"), and Club Clio NYC Corp. ("CCNC") — alleging claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the New York State Labor Law ("NYLL"), N.Y. Labor Law § 650 *et seq.*; and the New Jersey Wage and Hour Law ("NJWHL"), N.J.A.C. § 12:56-2.1 *et seq. See* ECF No. 2 ("Compl."). The Court conditionally certified the case as a collective action under the FLSA, *see* ECF No. 46, and one person, Aeri Moon, consented to join as a Plaintiff, *see* ECF No. 61. Kim and Moon now move, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment. ECF No. 86 ("Pls.' Mem."), at 1. DKCC cross-moves for partial summary judgment as well, seeking a declaration that it was not Plaintiffs' employer before its date of incorporation, October 1, 2018. ECF No. 90 ("Defs.' Opp'n), at 11. For the reasons that follow, Plaintiffs' motion is granted in part and denied in part and Defendants' cross-motion is granted.

## BACKGROUND

The following facts, drawn from the admissible materials submitted in connection with this motion, are either undisputed or described in the light most favorable to the non-moving party, except where noted. *See Costello v. City of Burlington*, 632 F.3d 41, 45 (2d Cir. 2011).

Lee is the sole owner of the four corporate Defendants. ECF No. 82 ("Pls.' Rule 56.1 Stmt."), ¶¶ 3, 10, 29, 37. At all relevant times, CCC and CCNC (together, the "Club Clio") operated stores located in Flushing, Queens, and Union Square, Manhattan, respectively, that sold Korean-made cosmetics. *Id.* ¶¶ 5, 7, 11, 12. DKC and DKCC (together, the "DK Cosmetics Entities") were cosmetic wholesalers that share offices in Flushing, Queens, and Manhattan, as well as a warehouse in Ridgefield, New Jersey. *Id.* ¶¶ 30-34, 38-41.

Kim was hired to work for the Club Clio in New York on May 16, 2016, as an assistant manager. *Id.* ¶¶ 74, 78, 87. He worked at both the Flushing and Union Square retail stores, *id.* ¶¶ 79, 80, and was paid a fixed monthly salary, *id.* ¶ 82. On October 16, 2017, Kim was reassigned to work in the New Jersey warehouse, *id.* ¶¶ 116-17, where he was also paid a fixed salary, *id.* ¶¶ 120-21. In each case, Kim worked over forty hours most weeks. *Id.* ¶¶ 94, 119; ECF No. 87 ("Defs.' Rule 56.1 Resp."), ¶¶ 94, 119. Defendants, however, produced only one record of an overtime payment, for February 2018. Pls.' Rule 56.1 Stmt. ¶ 51.

Moon was hired at the Club Clio on November 20, 2014, and worked there until July 15, 2018, with three leaves of absence, from May 16, 2016, to June 15, 2016, in September 2016, and from December 26, 2016, to June 23, 2017. *Id.* ¶¶ 99-100. She was paid a fixed monthly salary. *Id.* ¶¶ 102-05. Defendants allege that Moon was hired as a part-time employee and, at some unspecified time, transitioned to a full-time employee. Defs.' Rule 56.1 Resp. ¶¶ 157-58; ECF No. 89 ("Wang Decl."), ¶ 3-4. The details of Moon's employment are less clear, however,

2

because she was not deposed due to her deployment with the U.S. Navy. Defs.' Opp'n 2; *see also* ECF No. 98-2.

On September 30, 2019, Kim brought this case, seeking recovery of unpaid overtime wages, spread-of-hours premiums, and statutory damages for violations of state record-keeping and notice requirements. Compl. ¶ 2. On April 24, 2020, the Court conditionally certified the case as a collective action under the FLSA. ECF No. 46. Moon's consent to join the collective action was received on October 29, 2020. ECF No. 61.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record demonstrates that there are no genuine disputes as to any material facts and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, that demonstrate the absence of a genuine dispute regarding any material fact. *See Celotex*, 477 U.S. at 323; Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, *Overton v. N.Y. State Div. of Mil. & Naval Affs.*, 373 F.3d 83, 89 (2d Cir. 2004), and the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). Where, as here, both sides move for summary judgment, a court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party."

*Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011). Thus, "neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993).

## DISCUSSION

In their opposition to Plaintiffs' motion for summary judgment, Defendants concede several important facts. First, they admit that Lee was Kim and Moon's "employer" under the FSLA, NYLL and NJWHL; that the two Club Clio entities were Kim's and Moon's employers while they worked at the retail stores in New York; and that DKC was Kim's employer when he worked at the warehouse in New Jersey. Defs.' Opp'n 8-9. Second, they admit that Kim and Moon "did not receive all the overtime to which they were entitled" and generally agree with the method of calculation put forward by Plaintiffs, subject to a few factual disputes, discussed below. *Id*. at 2. And third, they admit that the Club Clio entities failed to provide certain notices required under the NYLL in Plaintiffs' primary language, Korean, and that the wage statements that Club Clio provided did not contain all of the information required by the NYLL. *Id*. at 10-11; *see also* N.Y. Labor Law §§ 195(1)(a), (3). Accordingly, the Court grants summary judgment to Plaintiffs with respect to each of those issues and on Counts Four and Five of the Complaint, which allege violations of NYLL §195(1)(a) and § 195(3).

The parties' motion papers reveal six disputes. The Court will address each in turn.

**A. Kim's Hourly Rate**

First, the parties dispute the hourly rate that should be used to calculate Kim's damages. Plaintiffs' motion for summary judgment uses a forty-hour work week to calculate the hourly rate at which Kim was paid. Pls.' Mem. 19-22; *see also* ECF No. 85-22 ("Kim Tr."), at 6-9 (testifying that he was supposed to work "40 hours a week, because I should work eight hours

4

per day"). In their opposition, however, Defendants assert that Kim actually agreed to work for the Club Clio for forty-five hours a week, citing a declaration sworn by Lee. Defs.' Opp'n 4, 7; *see* ECF No. 88 ("Lee Decl."), ¶¶ 6, 14, 31. Thus, Defendants argue, Kim's hourly rate should be $12.82, not $14.42. *See* Defs.' Opp'n 4. In their reply, Plaintiffs argue that Lee's declaration directly contradicts his deposition testimony and, thus, constitutes a "sham affidavit" that does not create a genuine issue of fact. ECF No. 95 ("Pls.' Reply"), at 3-4.

       The Court agrees with Plaintiffs. It is well settled that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473 (2d Cir. 2014) (quoting *Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996)). "Courts in the Second Circuit are particularly reluctant to credit affidavit testimony that alleges critical, obviously material facts that were not mentioned at deposition, noting that such circumstances strongly suggest a sham affidavit." *Golden v. Merrill Lynch & Co.*, No. 06-CV-2970 (RWS), 2007 WL 4299443, at *9 (S.D.N.Y. Dec. 6, 2007). Relatedly, "a party cannot create a triable issue of fact, and thus avoid summary judgment, by renouncing deposition testimony to the effect that he could not remember a particular fact which he now purports to remember." *Fed. Deposit Ins. Corp. v. Murex LLC*, 500 F. Supp. 3d 76, 94-95 (S.D.N.Y. 2020); *see also Kennedy v. City of New York*, 570 F. App'x 83, 84-85 (2d Cir. 2014) (summary order); *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997); *Pugh v. Casimir*, No. 18-CV-7350 (EK), 2021 WL 4463103, at *8 (S.D.N.Y. Sept. 29, 2021) (citing cases).

       Applying these rules here, Lee's declaration plainly qualifies as a sham affidavit. At his deposition, he was asked if he knew "how many hours Mr. Kim was supposed to work or scheduled to work in New York," and he replied: "No." ECF No. 85-1 ("Lee Tr."), at 80. He was also asked what "the work hours" were "for [his] employees at Club Clio," and he replied: "I

5

don't have clear knowledge." *Id*. at 78. Lee testified that he visited the Club Clio stores "once or twice a year," *id*. at 169, and that he "did not manage those retail stores" but instead "only provided monetary support when they were short of money," *id.* at 141. In his declaration submitted in opposition to Plaintiffs' motion, however, Lee alleges that "[t]he terms of Ga Ho Kim's employment, as he and I agreed to, were that he would work 45 hours a week." Lee Decl. ¶ 6; *see also id.* ¶ 14. This obviously material claim directly contradicts his prior deposition testimony. Thus, the declaration does not create a triable issue of fact and is insufficient to overcome the "rebuttable presumption that a weekly salary covers 40 hours." *Moon v. Kwon*, 248 F. Supp. 2d 201, 207 (S.D.N.Y. 2002). The Court therefore grants summary judgment to Plaintiffs on the issue of Kim's hourly rate.

## B. Kim's Lunch Breaks

Next, Defendants argue that Plaintiffs' overtime wage calculations as to Kim are incorrect because they "fail to account for" the fact that he "had one hour off each day for lunch." Defs.' Opp'n 4; *see* Lee Decl. ¶ 6. This, they argue, "increases his time by one hour a day, which results in a five-day work week overstated by five hours." Defs.' Opp'n 4. Plaintiffs respond that this lunch break is "unsupported by any records," except Lee's declaration, and that the Court should not credit the declaration as to this point because Lee rarely visited the Club Clio so "it is impossible for Lee to know whether Kim actually took his lunch hours." Pls.' Reply 5. In his deposition, Kim testified that "lunch hour" at the Club Clio was *scheduled* "for about 30 minutes," Kim Tr. 10-11, and that, in the New Jersey office, "it was 30 minutes for lunch, but that office was very busy so sometimes I had lunch and then the work simultaneously," *id*. at 19-20. Notably, however, Kim was not asked whether he actually *took* his lunch break when he worked at the Club Clio or how often he was required to work through lunch when he worked in New Jersey. *See, e.g.*, *Mendez v. Radec Corp.*, 232 F.R.D. 78, 83

(W.D.N.Y. 2005) ("[N]ot every interruption of an employee's lunch break renders the entire break period compensable under the FLSA."). The record is therefore insufficient to support summary judgment in favor of Plaintiffs on this front.

## C. Kim's Driving Hours

The third dispute is over whether Kim is entitled to be paid for time driving to and from work in New Jersey. Plaintiffs add three and a half hours to Kim's work hours every day that he worked in New Jersey, from October 16, 2017, to November 15, 2018, to account for the time that he spent driving back and forth between Flushing, Queens, where he lives, and Ridgewood, New Jersey, where Defendants' warehouse is located. Pls' Mem. 18-19. According to Plaintiffs, this time is compensable because Kim was required to drive several other employees with him and, on the way home, was often asked to drop off merchandise at the Club Clio retail stores. *Id*. They also allege that he was given a company car and reimbursed for tolls and gas. *Id.* at 18. Defendants disagree with this characterization, arguing that Kim "simply participated in a carpooling arrangement that predated his employment in New Jersey." Defs.' Opp'n 5-7; *see also* Lee Decl. ¶¶ 8-9. They allege that the car belonged to a friend of Kim's whose job Kim took over when he transitioned to the New Jersey location; that Kim never spoke to Lee directly about the car; and that driving was never part of Kim's job responsibilities. Defs.' Opp'n 2, 5-7.

The Portal-to-Portal Act, 29 U.S.C. § 254, provides that normal commute time to a work site is not usually compensable under the FLSA. *See, e.g.*, *Kavanagh v. Grand Union Co. Inc.*, 192 F.3d 269, 271-72 (2d Cir. 1999). Specifically,

> the use of an employer's vehicle for travel by an employee and activities performed by an employee which are incidental to the use of such vehicle for commuting shall not be considered part of the employee's principal activities if the use of such vehicle for travel is within the normal commuting area for the employer's business or establishment and the use of such vehicle for travel is subject to an agreement on the part of the employer and the employee or representative of such employee.

29 U.S.C. § 254(a). In general, "while employees need not be compensated for or on account of commuting to and from work, they must be compensated for any work performed during a commute that is integral and indispensable to a principal activity of their employment." *Singh v. City of New York*, 524 F.3d 361, 367 (2d Cir. 2008) (internal quotation marks omitted). A major factor in determining "whether an employee's expenditure of time is considered work under the FLSA" is "whether that time is spent predominately for the benefit of the employer or the employee." *Id*. at 368. Significantly, however, courts have recognized a *de minimis* exception to the FLSA. *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ("It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved."); *see also Singh*, 524 F.3d at 370-71. In determining whether the exception applies, courts consider "(1) the practical administrative difficulty of recording the additional time; (2) the size of the claim in the aggregate; and (3) whether the claimants performed the work on a regular basis." *Reich v. New York City Transit Auth*., 45 F.3d 646, 652 (2d Cir. 1995) (internal quotation marks omitted).

How these principles apply to this case cannot be decided on the current record. The mere fact that Kim may have been encouraged (or even required) to pick up other employees from locations near his home in Queens and bring them with him to New Jersey, or to make occasional deliveries to retail stores in New York on his way home, certainly does not render his *entire* commute compensable. *See, e.g.*, *Singh*, 524 F.3d at 364 ("[T]he mere carrying of inspection documents without any other active employment-related responsibilities while commuting is not work under the FLSA, *except to the extent that it increases the duration of the commute*." (emphasis added)); *see also, e.g.*, *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1288 (10th Cir. 2006) ("[U]nless the plaintiffs' travel was an integral and indispensable part of their principal activities *because* they were traveling together with their crew, then the alleged

carpooling requirement does not transform the plaintiffs' travel time into compensable work hours."). But if Kim can establish that he was required to pick up the other employees and that the arrangement was primarily for the benefit of his employer, he may be able to recover compensation for the time, if any, that the pickups added to his commute. And because making deliveries was clearly for the benefit of his employer, "there is no question that" Kim should be compensated for "any *added* commuting time" that the deliveries caused. *Singh*, 524 F.3d at 370 (emphasis added). Ultimately, though, the record is not clear on many of the relevant facts, including, for example, how often Kim performed these tasks and what time, if any, they added to his commute. Nor are such issues solely relevant to the question of damages, as the facts could conceivably support application of the *de minimis* exception. *See, e.g.*, *Reich*, 45 F.3d at 652-53. Accordingly, summary judgment must be and is denied on the issue of whether, or to what extent, Kim is entitled to compensation for his commuting time.

### D. Moon's Overtime Claims

Plaintiffs move for summary judgment on Moon's overtime claims for the period from November 20, 2014, through July 15, 2018. Pls.' Mem. 23-24. They use the records that Defendants produced from January 1, 2016, to August 31, 2016, to calculate Moon's average daily and weekly working hours and argue that the Court should infer that Moon worked the same number of hours during the periods for which Defendants did not produce records. Pls.' Mem. 16-17. Defendants do not challenge this methodology in general, but, relying on an affidavit from one of Moon's co-workers at the Club Clio, argue that it is inappropriate for at least some of Moon's tenure because she had "worked part time." Defs.' Opp'n 7; *see also* Wang Decl. ¶¶ 3-5 ("When Aeri Moon began working, she only worked part time. She generally worked three days a week."). Plaintiffs contend that the Court should not consider this new information because it was not produced in discovery, *see* Pls.' Reply 12-13, but Defendants are

9

entitled to submit declarations in opposition to a motion for summary judgment, *see* Fed. R. Civ. P. 56(c)(4), and Plaintiffs do not, and cannot, argue that Wang's declaration is deficient. Accordingly, summary judgment must be and is denied as to Moon's overtime compensation because there is a genuine dispute of fact regarding her work hours.

**E. Kim's Liquidated Damages in New Jersey**

On August 6, 2019, the New Jersey Wage Theft Act ("WTA") was signed into law. 2019 NJ Sess. Law Serv. Ch. 212 (S. 1790). Among other changes, the act amended the NJWHL to provide "liquidated damages equal to not more than 200 percent of the wages lost or of the wages due." N.J. Stat. Ann. 34:11-4.10(c). The statute provided that, except for one section not relevant here, "[t]his Act shall take effect immediately." *Id*. § 14. In light of the WTA, Plaintiffs argue that Kim is entitled to 200 percent of his unpaid wages for the period he was employed in New Jersey, *see* Defs.' Opp'n 26 — even though his last day of work was November 15, 2018, prior to the effective date of the law. But the overwhelming majority of courts (including, it appears, every federal court) to consider the issue have held that the WTA does not apply retroactively to conduct that predates August 6, 2019. *See, e.g.*, *Jones v. HESP Solar*, No. 20-CV-13056 (SRC), 2021 WL 1904734, at *6 (D.N.J. May 12, 2021); *Magee v. Francesca's Holding Corp*. No, 17-CV-565 (RBK) (JS), 2020 WL 2768679, at *2-4 (D.N.J. May 28, 2020); *Saiyed v. Archon, Inc.*, No. 16-CV-9350 (JMV), 2020 WL 7334190, at *3 n.6 (D.N.J. Dec. 14, 2020); *Wang v. Chapei LLC*, No. 15-CV-2950 (MAS), 2020 WL 468858, at *6 n.12 (D.N.J. Jan. 29, 2020); *Vazquez v. Spain Inn, Inc.*, No. 19-CV-452 (JMV), 2019 WL 5258197, at *3 n.6 (D.N.J. Oct. 17, 2019); *Buchspies v. Pfizer, Inc.*, No. 18-CV-16083 (JMV), 2019 WL 5078853, at *4 n.6 (D.N.J. Oct. 10, 2019).[1] As these courts have explained, "settled rules of

---

[1] Plaintiffs cite *Castro v. Linden Bulk Transp. LLC*, No. ESX-L-006141-19, at 11 (N.J. Sup. Ct. Essex Cnty. Jan. 4, 2021), in which a lower New Jersey court held that "the liquidated damages provision" of the WTA "can be accorded retrospective effect to otherwise actionable

statutory construction favor prospective rather than retroactive application of new legislation" in New Jersey. *Jones*, 2021 WL 1904734, at *6 (cleaned up). The limited exceptions to these rules — namely, where the legislature expresses its intent that the law apply retroactively, where the amendment is curative, or where the expectations of the parties so warrant — are inapplicable to the WTA. *See id*. at *6-7. Accordingly, and notwithstanding the fact that Defendants did not cross-move on the issue, Defendants are entitled to summary judgment on Plaintiffs' claim for liquidated damages under the WTA. *See, e.g.*, *Orix Credit All., Inc. v. Horten*, 965 F. Supp. 481, 484 (S.D.N.Y. 1997) (noting that a court may grant summary judgment to a non-moving party, even without a formal cross-motion, if "there are no genuine issues of material fact," "the law is on the side of the non-moving party," and "the moving party has had an adequate opportunity to come forward with all of its evidence").

## F. DKCC's Liability Prior to Incorporation

Finally, Defendants move for summary judgment on just one issue — seeking a ruling that DKCC was not Kim's "employer" before it was incorporated on October 1, 2018. Defs.' Opp'n 11. They are plainly correct because — absent a viable basis to impose successor liability, *see, e.g.*, *Li v. New Ichiro Sushi Inc.*, No. 20-CV-1783, 2021 WL 6105491, at *2 (2d Cir. Dec. 21, 2021) (summary order), which Plaintiffs do not seek here — a corporation cannot be directly liable for conduct that occurred before it even existed. *Cf., e.g.*, *Ruixuan Cui v. E. Palace One, Inc.*, No. 17-CV-6713 (PGG), 2019 WL 4573226, at *10 (S.D.N.Y. Sept. 20, 2019) ("Plaintiff does not explain how the Lin brothers' alleged control over the dissolved corporations would render the dissolved entities 'employers' of Plaintiff for purposes of the FLSA and NYLL, or otherwise render those entities liable for conduct that took place after their dissolution.");

---

conduct that occurred prior to its effective date." The Court finds the *Castro* court's reasoning to be unpersuasive and declines to follow it in the face of the authority cited above.

11

*Hernandez v. Delta Deli Mkt. Inc.*, No. 18-CV-0375 (ARR) (RER), 2019 WL 643735, at *3 (E.D.N.Y. Feb. 12, 2019) ("The entirety of Mendez's claims accrued [after] Corporate Defendants had been legally dissolved. . . . Accordingly, none of these Corporate Defendants could have 'employed' Mendez for purposes of the FLSA or NYLL, whether directly or as joint or single employers. Therefore, they cannot be held liable for actions that occurred subsequent to their legal dissolution."), *report and recommendation adopted*, March 4, 2019. Notably, Plaintiffs cite no legal authority to the contrary and merely argue that allowing Lee to "establish a new (but identical) business entity to continue [his] business and evade liability" would be "contrary to public policy." Pls.' Reply 9-10. But that argument is undermined by the fact that Lee himself is liable as an employer. And, of course, there may be other doctrines (piercing the veil or fraudulent conveyance, for example) that can counter such maneuvers. Whatever the case may be, Plaintiffs provide no valid basis to hold DKCC liable for conduct before its creation. Accordingly, summary judgment is granted to DKCC on that score.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment, ECF No. 80, is GRANTED IN PART and DENIED IN PART; Defendants are GRANTED summary judgment on the applicability of the WTA; and Defendants' cross-motion for summary judgment — seeking a ruling that DKCC is not liable for conduct before October 1, 2018 — is GRANTED.

Unless and until the Court orders otherwise, the parties shall submit a proposed joint pretrial order and associated materials (in accordance with Section 5 of the Court's Individual Rules and Practices in Civil Cases, available at https://www.nysd.uscourts.gov/hon-jesse-m-furman) **within forty-five days of the date of this Opinion and Order**. The Court will schedule a pretrial conference after reviewing the parties' submissions to discuss the procedures for and timing of trial in light of, among other things, the COVID-19 pandemic.

In the meantime, given the limited nature of the issues that remain in dispute, the Court is firmly of the view that the parties should try to settle this case without the need for an expensive trial.  To that end, the Court directs the parties **to confer immediately** about the prospect of settlement and about conducting a settlement conference before Magistrate Judge Wang (or before a mediator appointed by the Court or retained privately).  If the parties agree that a settlement conference would be appropriate, they should promptly advise the Court and, if needed, seek an appropriate referral and extension of the pretrial deadlines.

The Clerk of Court is directed to terminate ECF Nos. 80 and 91.

SO ORDERED.

Dated: February 23, 2022
      New York, New York

                                               JESSE M. FURMAN
                                      United States District Judge