

HENRY L. KIM*
JOSHUA S. LIM*
KENDAL SIM*
SEAN S. KWAK*
NICHOLAS J. DUBOIS*
JOHN CHEN*

**KIM, CHO & LIM, LLC**
Attorneys at Law

NY Office:
164-01 Northern Boulevard
2nd Floor
Flushing, NY 11358
T: 718.539.7400
F: 917.463.1590

\*    Admitted in NJ & NY

460 Bergen Boulevard, Suite 305, Palisades Park, NJ 07650
T: 201.585.7400   F: 201.585.7422

Reply to NJ Address only

April 26, 2022

<u>Via ECF</u>
United States District Court
Southern District of New York
ATTN: HON. ONA T. WANG, U.S.M.J.
500 Pearl Street, Courtroom 20D
New York, New York 10007

      **RE:**    **GA HO KIM v. DKCOSMETICS, et al.**
                 Case No.: 1:19-cv-09079-JMF

Dear Judge Wang:

      As Your Honor is aware, this office represents the plaintiff, Ga Ho Kim ("Kim"), and the member of the Fair Labor Standards Act collective, Aeri Moon ("Moon") (Kim and Moon collectively, "Plaintiffs"), in the above-referenced matter. This office and counsel for Defendants, Kenneth Elan, Esq. and Joseph P. Garland, Esq., jointly submit this letter to request that the Court approve the terms of the parties' settlement of the above-referenced matter. The fully-executed Settlement Agreements and Releases ("Agreement") is annexed hereto as **Exhibits A and B** (for Kim and Moon, respectively).

## STATEMENT OF THE CASE

    **A.  Plaintiffs' Position.**

      Kim alleged claims for unpaid overtime premium and liquidated damages under the FLSA and the New York Labor Law ("NYLL"), statutory damages under NYLL §§ 198(1-b) and 198 (1-d), as well as an unpaid spread-of-hour premium, among other relief. Kim brought this action as a putative FLSA collective action and an FRCP 23 class action. His application for conditional certification of the FLSA collective was granted on Defendants' consent and, upon notice, only one member, Moon, opted in. Plaintiffs have not moved for FRCP 23 class certification.

      Defendants had several retail storefronts in New York and a warehousing facility in New Jersey and all were owned and controlled by Defendant John Lee. Kim alleged that he was first hired to work in the New York retail stores, then relocated to work at the New Jersey warehouse. He alleged that he was paid a salary, on a daily basis for the first few months and on a semi-monthly basis thereafter. Kim alleged that, while employed in New Jersey, he was also tasked with

driving duties, providing transportation for other employees of Defendants and dropping off merchandise from the New Jersey warehouse to the New York retail stores.

Moon opted in as a member of the FLSA collective. Moon alleged she is similarly situated as Kim, albeit only with respect to the work performed in New York. She was not employed in New Jersey nor was required to drive.

Plaintiffs both alleged that they worked in excess of forty (40) hours in a workweek and therefore alleged they were entitled to payment of an overtime premium. They also alleged having worked a spread of hours in excess of ten (10) hours in a given day. Both further alleged they were never provided a proper wage notice as required under NYLL § 195(1) nor wage statement as required under NYLL § 195(3). Neither Plaintiff was exempt from overtime compensation.

### B. Defendants' Position.

Defendants consisted of two entities that operated retail stores in NY where Kim or Moon worked, two entities that operated a warehouse in Ridgefield, New Jersey, and John Lee, who owned the other defendants. They generally denied Plaintiffs' allegations and claims. In support of their denial, Defendants produced records of Plaintiffs' work hours, an offer of employment alleged to satisfy the requirements under NYLL § 195(1), and slips alleged to satisfy the requirements under NYLL § 195(3). Defendants did not argue that either Plaintiffs are exempt from overtime compensation. After discovery was completed and Judge Jesse Furman decided the summary judgment motions, Defendants recognized that they had some significant liability for the underlying claims and that they would also be liable for the significant attorney's fees incurred by Plaintiffs.

Defendants further alleged that Defendant DKCOS Corp. was not an employer of Plaintiff Kim, as its formation date post-dated the end of Plaintiffs' alleged employment with Defendants. DKCOS Corp. was dismissed from the action on by Order dated February 23, 2022, as set forth below but is a party to the settlement.

## PROCEDURAL HISTORY

The parties engaged in a mediation effort before Your Honor that ended in March 2020, without a settlement. The parties completed discovery. The depositions of Kim and Defendants were taken. Due to Moon's service in the U.S. Navy, her deposition was not taken. After the completion of discovery, Plaintiffs moved for summary on July 2, 2021. Defendants cross-moved to dismiss all claims against Defendant DKCOS CORP. As noted, Judge Furman decided that motion on February 23, 2022, granting in part and denying in part the motion and granting the cross-motion. The decision clarified several issues and facilitated the parties settling of this matter.

## SETTLEMENT NEGOTIATIONS AND TERMS

After the entry of Judge Furman's order on the motions for summary judgment, the parties, in an effort to avoid the time, expense, and inconvenience associated with further litigation, actively engaged in settlement discussion. The parties' negotiation was a continuation of the same

left off shortly prior to the filing of their respective motion and cross-motion for summary judgment.

Plaintiffs' calculation of Kim's damages, based on the partial summary judgment awarded, yielded approximately $100,000. Based on the records produced by Defendants, Moon's damages were approximately half of Kim's damages. Plaintiffs demanded a settlement for close to $200,000. Defendants acknowledged that they were liable for some amounts to both Plaintiffs, related to the NYLL claims and to their failure to pay at least some overtime compensation according to their own time records. In response to Plaintiffs' settlement demand, Defendants pleaded its financial difficulties. In fact, Defendants' businesses in New York were already closed during the COVID-19 pandemic and the parties agreed that Defendants' warehousing business in New Jersey, too, was struggling.

To avoid the uncertainty and additional costs associated with further litigation and, for Plaintiffs, to further avoid the burden of collection upon obtaining a judgment, the parties have agreed to $150,000 as the total settlement payment, to be paid over five (5) months to further accommodate for Defendants' financial circumstances. The payments are allocated as follows:

- $100,000 for the settlement of Kim's claims, one-third (1/3) of which will be paid to Plaintiffs' counsel as legal fees. One-half of Kim's receipt will be paid on IRS form W-2, representing his unpaid wages, and the other half will be paid on IRS form 1099, representing liquidated damages available under the FLSA.

- $50,000 for the settlement of Moon's claims, one-third of which will be paid to Plaintiffs' counsel as legal fees. One-half of Moon's receipt will be paid on IRS form W-2, representing her unpaid wages, and the other half will be paid on IRS form 1099, representing liquidated damages available under the FLSA.

After reaching a settlement in principle and advising the Court of the same, the parties jointly drafted and signed Settlement Agreements, the terms of which are memorialized in **Exhibits A and B**.

### THE TERMS OF SETTLEMENT ARE FAIR AND REASONABLE

This Court,

> [i]n determining whether the proposed settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion.

Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (Furman, J.) (quoting Medley v. Am. Cancer Soc., 10-cv-3214, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010).

By Plaintiffs' calculation, applying the hourly wage as determined in Judge Furman's February 23, 2022 Order and relying on the records provided by Defendants, each Plaintiff would be entitled to the following amounts:

Plaintiff Ga Ho Kim:

- Unpaid Wages: $38,952.28
- Liquidated Damages: $38,952.28
- Statutory Damages: $10,000.00
- Total: $87,904.56

Plaintiff Aeri Moon:

- Unpaid Wages: $26,124.75
- Liquidated Damages: $26,124.75
- Statutory Damages: $10,000.00
- Total: $62,249.50

In addition to the above, Plaintiff Ga Ho Kim alleges having worked hours for his driving duties. Per the February 23, 2022 Order, "… if Kim can establish that he was required to [perform his alleged driving duties,] he may be able to recover compensation for the time, if any, that the pickups added to his commute. And because making deliveries was clearly for the benefit of his employer, 'there is no question that' Kim should be compensated for 'any *added* commuting time' that the deliveries caused." Kim alleged that his total driving duties added approximately 3.5 hours to his commute time daily, wherein his normal commute time would have taken one (1) hour each day. Throughout the numerous settlement discussions that took place between counsel throughout the case, the factual issue concerning whether Kim was entitled to compensation for his driving time was a major stumbling block, partially resolved in the summary judgment order.

Taking into consideration the foregoing, Kim's damages adding only 2.5 hours to his work hours while employed in New Jersey yields the following damages:

- Unpaid Wages: $45,642.63
- Liquidated Damages: $45,642.63
- Statutory Damages: $10,000.00
- Interest (as of 4/13/2022): $101,285.26

Plaintiffs recognize, however, that the foregoing is subject to meeting the additional burden of proof of showing entitlement to the statutory damages and further proving that Plaintiffs were not afforded any breaks, for meal or otherwise. The Order on summary judgment did not resolve these issues. Furthermore, Kim has a greater burden of showing the hours he spent for his driving duties, as well as the difference between that and his normal commute time. In light of the infamous traffic over the George Washington Bridge during rush hour, efforts to establish the same comes

4

with a significant risk of being credited for much less hours for his driving than Plaintiff would wish for.

If all the remaining issues would be ruled against Plaintiffs, the dollar-figures set forth above may be reduced significantly. On the other hand, if they are ruled in favor of Defendants, the damages would increase significantly. Plaintiffs face the risks inherent in proceeding to a trial. In addition, Defendants pleaded financial difficulty and have made a showing to Plaintiffs' satisfaction that collection of any judgment against Defendants would come with significant hurdles.

In view of the foregoing risks and additional efforts anticipated for the ultimate payment for Plaintiffs' damages, Plaintiffs and Defendants have come to a settlement of the matter for $150,000 as a result of the parties' arm's-length negotiation and compromise on both ends. It is not the result of any collusive acts. It is within the range of Plaintiffs' potential recovery and therefore is a fair and reasonable compromise for avoiding the risks of further litigation. Moreover, by this settlement, the parties will avoid the burdensome costs of proving their respective claims and defenses. The parties' settlement negotiations were adversarial, lengthy, and came to fruition only after Plaintiffs were granted partial summary judgment.

Considering the above factors, the parties respectfully request that the Settlement Agreement and Release be deemed fair and reasonable. With the assistance of her counsel, Plaintiffs have made an informed decision to settle this matter and to avoid the burdens, costs, and risks associated with further litigation and potential collection if Plaintiffs were to succeed at trial.

## **PLAINTIFFS' ATTORNEYS' FEES ARE FAIR AND REASONABLE**

Pursuant to the settlement agreement, Plaintiffs Kim and Moon will receive a total of $64,756.87 and $32,378.44, respectively. Their counsel will receive thirty-three percent (33%) of the total settlement, $48,567.66 as provided in the contingency retainer agreement signed by Kim and as provided in the Collective Action Notice[1] provided to Moon, upon receipt of which she opted-in as an FLSA collective member. Lastly, $4,297.04 will also be paid to Plaintiffs' counsel for the costs of this action for the depositions and filing fees.

"As an initial matter, courts in this district regularly approve attorney's fees of one-third of the settlement amount in FLSA cases. See Singh v. MDB Construction Mgmt., Inc., No. 16-CV-5216 (HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is 'normal rate')." Kim v. Choi, No. 19-CV-8911 (OTW) (S.D.N.Y. May 4, 2021) (Wang, M.J.).

As Judge Furman remarked in Wolinsky, "[t]o aid a court in determining the reasonableness of proposed attorney's fees, counsel must submit evidence providing a factual basis for the award." 900 F. Supp. 2d, at 336.

---

[1] The Collective Action Notice was approved by the Court on April 24, 2020. (DE#45)

5

As in <u>Kim v. Choi</u>, the Court should consider the one-third of the settlement in this case against the amount of work performed by Plaintiffs' attorneys and the experience of that counsel. For this a check by applying various factors applied in lodestar cases is useful. Application of the so-called "<u>Goldberger</u> Factors" is a way to show the reasonableness of the requested fee. <u>Febus v. Guardian First Funding</u>, 870 F. Supp. 2d 337, 339 (S.D.N.Y. 2012) (Stein, J.) (referring to <u>Goldberger v. Integrated Resources, Inc.</u>, 209 F.3d 43 (2d Cir. 2000)). These factors are:

> (1) the time and labor expended by counsel;
> (2) the magnitude and complexities of the litigation;
> (3) the risk of the litigation ...;
> (4) the quality of representation;
> (5) the requested fee in relation to the settlement; and
> (6) public policy considerations.

<u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 121-22 (2d Cir. 2005) (quoting <u>Goldberger</u>, 209 F.3d at 50). Here, the factors weigh in favor of approving Plaintiff's counsel's fee representing one-third of the total settlement.

The first factor encompasses the lodestar method to a certain extent. Plaintiff's counsel has spent 238 hours and billed at the rate of $500 for partners, $400 for associates, and $150 for paralegals, for a total hourly billing of $86,907.50 as of April 1, 2022. Plaintiff's counsel's portion of the settlement payment represents a 0.56 multiplier to this lodestar. Plaintiff's counsel's time records, in the form of an invoice issued to Plaintiff Ga Ho Kim (but not sought to be collected against him), is annexed hereto as Exhibit C.

To provide information concerning the attorneys who worked on this matter:

- Joshua S. Lim, Esq., the partner at Kim, Cho & Lim, LLC, has practiced law since 2004 and has focused on labor law since around 2010.
- Sean S. Kwak, Esq. is an associate at Kim, Cho & Lim, LLC, and has graduated from the Buffalo Law School in February of 2017 and has practiced primarily in employment litigation and commercial litigation beginning in March of 2017 and until the present.
- John Chen, Esq. is an associate at Kim, Cho & Lim, LLC, and has graduated from the Brooklyn Law School in May of 2017 and has since practiced commercial litigation, including employment law. After Mr. Chen joined Plaintiffs' counsel's firm in 2020, he has helped Plaintiffs' counsel on this matter primarily to assist the lead counsel, Mr. Kwak.

Given the "0.56" lodestar multiplier, a maximum hourly rate of $279.42 is more than justified for the attorneys' hourly rates.

The second factor favors the award of attorneys' fees. The case involved a fact-intensive dispute concerning Plaintiffs' work hours, including those not contained in Defendants' records, as well as their break times, compensation. Particularly, Defendants paid Plaintiffs salary on a monthly, which severely complicated the calculation of Plaintiffs' wages, which had to be

converted into values suitable for weekly compensation in comport with the applicable employment laws.

Risk is inherent in taking any litigation to completion. Beckman v. KeyBank, N.A., 293 F.R.D. 467 (S.D.N.Y. 2013). The risk in this action was particularly greater in collection of any judgment to be obtained in this matter because Plaintiffs were primarily hired at Defendants' New York retail storefronts, the operating legal entities for which have become shell companies with no asset. However, Plaintiffs' counsel have successfully argued that all Defendants, except DKCOS Corp., were joint employers of Plaintiffs and have drawn settlement agreement whereby all Defendants would be held liable. Plaintiff's counsel takes pride in providing quality legal services to their clients.

The fee requested is one-third of the total settlement. As set forth above, the courts in this Circuit "routinely grant[ ] requests for one-third of the settlement funds. Febus, 870 F. Supp. 2d at 339 (S.D.N.Y. 2012). A plaintiffs' counsel takes on the risk of litigation, not knowing the ultimate recovery and putting in upfront "investment" by representing plaintiff-employees on a contingency basis. Should plaintiffs' counsel be prevented from receiving the bargained for fees, attorneys representing employees would be discouraged from representing their clients on a contingency basis.

Considering the foregoing Goldberger factors, the fees requested herein are fair and reasonable under the circumstances.

## **CONCLUSION**

Plaintiffs and Defendants have been represented by their respective counsel throughout this lawsuit. Under their counsel's guidance and advice, the parties have approved of and agreed to the terms of the settlement. Plaintiffs' interests have thus been adequately safeguarded.

For the foregoing reasons, the parties believe the terms of the settlement are fair and reasonable and that this Court should approve of the same. A stipulation of dismissal will be filed upon the Court's approval of the parties' settlement.

Thank you for the Court's consideration in this matter.

Respectfully submitted,

Sean S. Kwak, Esq.
Kim, Cho & Lim, LLC
*Attorneys for Plaintiff*

cc: Attorneys for Defendants – via ECF